BLANCHARD, J.
This was an action to set aside and annul a sale of immovable property on the ground of lesion beyond moiety.
Plaintiff and Perley Stafford were, in the beginning of the year 1900, owners of record of 1,040 acres of rice lands in the Parish of Calcasieu, which they had purchased in 1897 from Valery Ledoux for $12,000.00, to be paid in ten equal annual payments with interest at the rate of 8% per annum from date of sale.
They had paid nothing on the land — the instalments maturing in 1898, 1899 and 1900 not having been met.
Plaintiff and Stafford also owned at that time (the beginning of 1900) each an undivided one-fourth interest in and to a certain pumping plant, canal, etc., situated near their tract of land, known as the Linkswiler, Stafford, St. Germain and Marquet Canal— St. Germain and Marquet being the owners of the other two undivided fourths.
This canal and pumping plant was in a bad way. It had been a disappointment to its owners, and St. Germain, who represented himself and Marquet (a non-resident) had refused to permit the plant to be operated any longer as a going concern.
The lands plaintiff and Stafford owned were dependent for irrigation upon the canal, and without irrigation and drainage the lands were of little value for rice growing.
It thus became necessary for plaintiff and Stafford to buy out the interest of St. Ger-main and Marquet in the canal and pumping plant in order to save themselves from serious financial disaster which threatened.
But they had no money either to buy out St. Germain and Marquet, nor to enlarge and extend and improve the canal property, which was necessary to make it profitable, nor to meet their indebtedness to Ledoux for the purchase price of their land, nor yet to pay the expenses of cultivating the land in 1900 and subsequent years.
They were, thus, in pressing need of financial assistance. This they sought from the defendant, who referred them to other parties. But they failed to make arrangements with these other parties, and returned to the defendant. '
Then it was that the plaintiff, Stafford and defendant entered into a written agreement, which bears the date of January 10, 1900, and which seems to have vaguely embodied the understanding they had come to at that time.
Hoffman would not agree to go in with them in their plans of canal extension and improvement unless they purchased the interest of St. Germain and Marquet in the existing canal and pumping plant, and also secured the right of way for further canal, drainage and irrigation purposes over other lands in the vicinity, so as to carry out the plans which the parties had formed and agreed to between themselves. Therefore, it was that the contract of January 10, 1900, bound plaintiff and Stafford to purchase the St. Germain and Marquet interest in the canal and pumping plant and to secure the additional rights of way required.
And the said contract then stipulated that these interests and rights of way should be transferred to Hoffman without encumbrance, and that there should also be transferred to him, with all encumbrances thereon, the tract of 1040 acres of land, which plaintiff and Stafford had bought from Ledoux, and on which they still owed the entire purchase price of $12,000.00, secured by vendor’s lien.
Another obligation which plaintiff and Stafford assumed in the contract was to erect an additional pumping outfit on the line of the canal, at a place to be agreed on, of sufficient capacity to flood and irrigate certain other lands. Of the expenses, however, of this additional pumping outfit so to be erected, Hoffman was to bear one-half and, *951 in addition, a sum the amount of which was left blank (afterwards ascertained to be $1,-600.00) of the o.ther half.
Thus, the greater part of the expense of this second pumping plant was to be borne by Hoffman, though the obligation to erect it was, by the contract, placed on the plaintiff and Stafford.
Then the contract stipulated that Hoffman, who is named in it as the party of the second part, should convey back to Linkswiler and Stafford an undivided one-half interest in and to the property thus acquired by him — lands, canals, pumping plants, rights of way, etc.— retaining for himself a vendor’s privilege upon the same to secure him the reimbursement of a loan of $8,500.00, which he bound himself to make to them.
There was another stipulation to the effect that as a further consideration for the loan of the $8,500.00, Linkswiler and Stafford were to give Hoffman a bill of sale of certain personal property, and a lien upon the rice crops grown on their lands.
Hoffman made the loan of $8,500.00 to Linkswiler and Stafford, less a discount of 12%, which the parties agreed on, presumably in lieu of interest.
Linkswiler and Stafford purchased the half interest of St. Germain and Marquet in the canal and pumping plant. This they did for $6,000.00, of which $2,000.00 was paid in cash, and it was stipulated that the remaining $4,000.00 was to be paid out of the water rents of the lands watered by the canal.
The $2,000.00 was paid out of the $8,500.00 loan from Hoffman, and the $4,000.00 deferred payment was settled out of the water rents, under Hoffman’s management of the canal and pumping plant.
Following their purchase of the interest of St. Germain and Marquet in the canal, Linkswiler and Stafford executed a deed of conveyance to Hoffman of the 1,040 acres of land, and also of the canal and pumping plant.
The act recites the consideration of this transfer to be $8,500.00 “and other valuable considerations to us in hand paid by John H. Hoffman.” The act also recites that the land was sold “subject to all incumbrances.”
At that time the incumbrances on the land were the $12,000.00 due Ledoux with interest, and unpaid tax liens.
On the same day that the land and canal and pumping plant, was thus conveyed to Hoffman, by another instrument of writing Linkswiler and Stafford conveyed to him what purports to be a sale of 13 mules and 5 horses, the act reciting “being the same now in use by us upon our rice farm in Calcasieu Parish,”
The consideration of this transfer is recited to be “one dollar and other valuable considerations.”
The evidence shows that the stock thus sold never passed into the possession of Hoffman, was never demanded by him, and has always remained in the possession and use of Linkswiler and Stafford.
It was a nominal sale only — a mere paper title; a bill of sale.
In the autumn of 1901, some eighteen months subsequent to the sale of the land and canal plant to Hoffman, Linkswiler brought the present action to annul the sale.
It seems that Stafford declined to embark in a law suit with Linkswiler against Hoffman, and this resulted in Linkswiler purchasing the interest of Stafford in whatever rights they had under the contracts which had been entered into with Hoffman. This purchase took place a short time before the present suit was filed.
It took the form of a conveyance from Stafford to Linkswiler of an undivided half interest in and to the 1,040 acres of land and the canal outfit, with subrogation of rights and actions against Hoffman.
In his petition Linkswiler recites his version of the transactions of himself and Stafford with Hoffman, and charges that the latter, knowing of the financial stress upon them, took advantage of the same, and compelled them to agree to the contracts and sales hereinbefore mentioned.
He averred the value of the property conveyed to Hoffman was $50,000.00; that the half interest Hoffman was entitled to retain was worth half of that sum; and that the only consideration he or Stafford ever received for the conveyance of the said half interest to Hoffman was the making of the loan of $8,500.00 to them at the discount of 12%.
He alleged the conveyance was fraudulent, null and void for want of consideration, for lesion beyond moiety and because secured by duress, threats and fear of financial ruin.
*953 Defendant denied all these averments, and set forth at length his version of the transactions between himself and Linkswiler and Stafford.
He represented the same were entered into in good faith, and that plaintiff and Stafford were fully aware of their purport and effect, and entered into the same freely and of their own will; that the land Linkswiler and Stafford had bought from Ledoux, and for which they still owed the entire purchase price, was unproductive and practically valueless without the expenditure of large sums of money for drainage ánd other improvements, and that this Linkswiler and Stafford were unable to do; that after soliciting aid from others they came to him and it was at their request that he consented to become the owner of one-half of the land and of the irrigating plant near it; that he advanced them money to meet their pressing debts, assumed payment of half the debt due to Ledoux for the land, consented to use his own credit and skill, and undertake the improvement and management of the canal property, advancing money to meet operating expenses, etc., and undertaking to drain and render available for rice culture the land to be owned by them in common — he one undivided half, they the other — and making certain improvements upon the same; that he carried out all of these undertakings on his part, assumed management of the canal property, made it profitable, whereas it had been unprofitable before, and greatly increased its value; that he became the active manager of the farming and improvement operations upon their joint lands and of the business connected therewith, and expended large sums of money in furtherance of the same; and that these things and obligations on his part, together with the loan of $8,-500.00 which he made to them, constituted the true consideration of their transfer to him of a half interest in the land and canal property.
Subsequently plaintiff amended his petition, averring, among other things, that since the suit had been instituted he (plaintiff) had paid to defendant the amount of the loan $8,500.00, made to him and Stafford. He also withdrew the word “fraudulent” where it appeared in his original petition, and for “erroneous and fraudulent” in one paragraph of the petition, he substituted “misleading.”
The judgment of the court below rejected plaintiff’s demand and he appeals.
Ruling — Many matters appear in the record which it is not considered necessary to allude to in this opinion. We notice only those deemed of importance in stating and sustaining the conclusion to which the Court has come.
There was no error on part of the trial judge in permitting the introduction of parol testimony to show what entered into the consideration of the sale made to the defendant by the plaintiff and Stafford on January 27, 1900, which was the sale attacked for lesion beyond moiety.
The act, itself, mentioned $8,500.00 and “other valuable considerations to us in hand paid by Jno. H. Hoffman” as the reason or consideration for making it, and it also mentioned that the land conveyed was sold subject to encumbrances.
It was competent to show by parol, under the allegations of both the petition and answer, what the other considerations were, what the moving cause for making the conveyance was, what the encumbrances resting on the land were. Jackson v. Miller, 32 La. Ann. 432; Dickson v. Ford, 38 La. Ann. 736; Rev. Civ. Code, art. 1900.
Plaintiff averred and showed that the $8,-500.00 was really a loan. Defendant admitted this. His object in taking title to one undivided half of the property was to secure reimbursement of the loan of $8,500.00. He was to reconvey this half to his vendors when they paid the amount of the loan.
The consideration for the conveyance of the other undivided half was not set forth in the act, nor in the preceding contract of January 10th, 1900, and as there were other considerations, and the statement was made in the act of sale that there were, and as the petition of plaintiff charged the consideration set forth in the act was misleading, and that duress, threats, etc., were resorted to by defendant to procure his (plaintiff’s) and Stafford’s signatures to the same, it was entirely competent to show by parol the real cause superinducing to the sale to defendant of that half of the property which was to be and remain his in full ownership.
The evidence negatives altogether the charge of duress and threats, on part of Hoff *955 man, practiced on the plaintiff and Stafford, and there is no proof sustaining the averment that they were misled into signing the contracts to their detriment, or that there was any error on their part as to the nature and object of the contracts.
Lesion is defined by the law to be the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract, and the remedy given for this injury is founded on its being the effect of implied error or imposition. Rev. Civ. Code, art. 1860.
To relieve a vendor on account of lesion the consideration he receives for the transfer must be shown to be less than one-half of the value of the immovable property sold. Rev. Civ. Code, arts. 1861, 2589.
And when lesion is alleged to invalidate a sale, the value of the property, in the state in which it was at the time of the sale, must be the criterion (Rev. Civ. Code, arts. 1870, 1871, 2590) and against this must be measured the consideration received or enjoyed by the vendor, and which constituted the moving cause to him to part with his property, and the value of the same to him at the time. And, in this connection, it is permissible to take into consideration the circumstances by which the vendor is surrounded and give weight to the same in determining the value of the property to him at the time he makes the sale. Copley v. Flint, 16 La. 387; Parker v. Talbot, 37 La. Ann. 24.
Numerous witnesses testified as to the value of the property at the time of the sale. Their estimates differ widely. Consideration of the evidence on this point leads us to the conclusion that the District Judge was substantially correct when he adopted $15.00 per acre as the fair value of the land at the time, and $12,000.00 as the value of the canal and pumping plant.
The land at $15.00 per acre had a valuation of $15,600.00. This, added to the value of the canal and pumping plant, gives $27,600.-00 as the aggregate sum of the whole property at the date of the sale.
We are firmly convinced this was its full value to Linkswiler and Stafford under the circumstances by which they were then surrounded, and a fair market valuation without regard to those circumstances.
Only an undivided half of the property was really, as we have seen, sold to Hoffman — he holding the other undivided half merely as security for the loan of $8,500.00 made to Linkswiler and Stafford.
The land was then encumbered with $12,-000.00 of mortgage indebtedness to Ledoux, part of which had matured and was unpaid.
In purchasing a half of the land, Hoffman did so subject to the encumbrance on it. This left him to pay $6,000.00 to Ledoux with interest. The evidence shows he is meeting this debt (one-half of the whole) as it matures.
Then he undertook to pay $1,600.00 more than his half of the expense of erecting an additional pumping plant on the canal.
These two items aggregate $7,600.00, or within $200.00 of the entire value of half of the land at $15.00 per acre. Yet there can be no lesion except where the price given is less than one-half of the value of the thing given.
In the above calculation we have omitted the interest that was running on the notes Ledoux held, and which operated as a mortgage on the land.
Figuring on the sale as a whole, we find the property — land and canal outfit — worth, as shown above, $27,600.00. This made the half interest Hoffman acquired worth $13,-800.00.
To constitute lesion beyond moiety the price given must be shown to be less than one-half of the value. The half of $13,800.00 is $0,900.00. Less than the latter sum would be lesion. But, as shown above, the price paid by Hoffman, or which he undertook to pay, was $7,600.00, without calculating accruing interest on the Ledoux notes. This $7,600.00 is alone $700.00 more than the lesion-beyond-moiety figure, and, therefore, the attack on the sale must fail.
But there were other considerations which entered into the transactions between these parties.
• Hoffman undertook the superintendence and management of the canal and pumping plant, including the enlargement, extension and improvement of the system.
He entered upon these duties and as the result of his management the property, theretofore unprofitable, became profitable, and out of their share of the profits Linkswiler *957 and Stafford were enabled to pay and did pay St. Ctermain and Marquet $4,000.00, representing the balance of purchase price of their interest in the canal and pumping plant known as the Linkswiler, Stafford, St. Ger-main, and Marquet canal.
Por his management Hoffman received no salary.
Hoffman was wanted into the concern because he was a man of money and credit and he was expected to use and did use his money and credit in advancing the interest and operations of the canal property. This was another consideration entering into the transactions of the parties and a moving cause to consent thereto on part of Linkswiler and Stafford.
Linkswiler accepted the benefit of these dealings with Hoffman for nearly two years before instituting suit. He received his share of the profits under the contract and permitted Hoffman to expend time, skill and money without protest, and as a result Hoffman claims to be $3,417.63 out of pocket.
The sale which is attacked was, really, only a part of a business arrangement between the parties. They were to own jointly the canal property, improve it, extend it, make it more valuable and render it profitable; they were to become owners in indivisión of the 1,040 acres of land, which were to be drained and irrigated and made a productive rice farm.
As Stafford testified, the parties participating, himself, Linkswiler and Hoffman, were “to put their shoulders to the wheel” and make the thing pay, or hold to the property until it could be disposed of to good advantage. It was a business venture that they entered upon, and it turned out to be a successful one.
It looks to us like a case where Hoffman’s money, credit and skill were invoked to save a failing concern and did save it. The burden of the risk of failure was upon him. He had more to lose 'than the other two. Their position was already precarious, not to say desperate.
Defendant set up in his answer that Linkswiler and Stafford, in selling the 1,040 acres of land to him by the deed dated January 27, 1900, intended to convey the E. % of Section 21 and the W. % of Section 22, but by error it was written the W. % of S. 21 and the E. % 8. 22. He prayed for judgment correcting this error.
The evidence establishes the error complained of, and the trial Judge was about to decree the correction of the same when he discovered that Perley Stafford, one of the vendors, was not a party to the suit.
Whereupon, he ordered the case reopened so that Stafford could be made a party to the suit for the purpose solely of correcting the description of the land contradictorily with him. This was objected to by plaintiff and he complains here of the action of the Judge.
Stafford, himself, did not object. On the contrary, he consented to being made a party defendant for the purpose named, acknowledged service and waived citation, and filed an answer admitting the clerical error in the description of the land and consented to judgment correcting same.
Whereupon judgment was pronounced rejecting plaintiff’s demand for the annulment of the sale, and ordering correcticsi of the error of misdescription of the land conveyed.
Since Stafford does not complain of his having been made a party defendant, nor of the judgment against him ordering the correction of the description of the land, and since plaintiff’s position was not altered to his disadvantage by bringing Stafford into the case for the purpose, we have concluded to overlook whatever of irregularity of practice there may have been in making Stafford a party defendant — this in the interest of avoiding a possible second law suit.
Por the reasons assigned, the judgment appealed from is affirmed.