59 So.2d 889

**CORONA v. CORONA et al.**

No. 40500.

June 2, 1952.

Joseph A. Gladney, Baton Rouge, for plaintiff-appellant.

White & May, Baton Rouge, for defendants-appellees.

PONDER, Justice.

The plaintiff has appealed from a judgment of the lower court rejecting his demand to set aside a sale of real estate for lesion beyond moiety.

The plaintiff, Nicholas Corona, and his brothers, Peter A. Corona and Edward J. Corona, the defendants, were owners and partners of a business known as the Baton Rouge Poultry Company, engaged in purchasing and selling poultry. The business was located on Lot 7 of Square 38, Suburb Gracie, in Baton Rouge. Lots 19, 20 and 21 of said square and subdivision, lying just rear of Lot 7, were also used in operation of the business. Dissension arose among the brothers, particularly between plaintiff and Peter. After considerable discussion, it was decided that either the plaintiff or Peter would sell out his interest to the other brothers. It was finally agreed that the plaintiff would sell his interest in the business to his other two brothers for the book value of his interest. Their bookkeeper was asked to compute the book value of the plaintiff's interest and he arrived at the figure of $14,900. The parties employed the firm of White & May, attorneys, who are also notaries, to prepare the necessary papers to convey the interest of the plaintiff to the defendants. The attorneys suggested that the transaction be consummated in three notarial acts. The three notarial acts were simultaneously executed on August 2, 1948. The four lots and improvements were transferred by an act of sale for a consideration of $9,000, $3,440 in cash and the balance of $5,560 represented by an assumption on the part of the purchasers of a certain mortgage, granted by the brothers in favor of the Franklin Life Insurance Company in the original amount of $17,500. As an additional consideration for the price paid by the purchasers, the plaintiff agreed not to engage in the poultry business within the Parish of Baton Rouge for a period of

fifteen years. The business of the Baton Rouge Poultry Company, located on Lot 7, was transferred by an act of sale for a recited consideration of $11,460, to be paid as follows: $1,560 in cash, and for the balance of $9,900 the defendants executed their note payable in four equal installments of $2,000 each and one installment of $1,900. It is stated in this act of sale that "It is understood that there is being executed simultaneously with this transfer an act of sale and assumption by which vendor herein sells and delivers to vendees herein all of his right, title and interest in and to four (4) certain lots, with improvements thereon, being lots 7, 19, 20 and 21 of square 38, Suburb Gracie, in the City of Baton Rouge; that the consideration for both of these transfers, and the obligations assumed herein, is the sum of $14,900 and the assumption by vendees of that portion of a certain mortgage indebtedness created by vendor and vendees on December 29, 1947 in favor of the Franklin Life Insurance Company allocable to the interest of vendor in the real estate covered by said mortgage." An act of mortgage was executed by the defendants in favor of the plaintiff for $9,900, to secure the notes mentioned in the sale of the business, on the lots to secure the payment thereof.

It appears from the testimony that it was the agreement between the parties that the plaintiff sell his interest in the business and the real estate for a consideration of the sum of $14,900 and that the transaction was carried out in three separate acts at the suggestion of the attorneys representing them. At the time these acts were executed, the plaintiff contemplated entering into an entirely different business. However, sometime later, the plaintiff found that the business which he had intended to pursue was not to his liking or profitable and he then engaged in the poultry business in violation of the noncompetition clause. The defendants instituted suit to enjoin him from engaging in the poultry business, in violation of his agreement. After some negotiations, the injunction suit was compromised by an agreement dated January 14, 1949. The agreement releasing him from the non-competition clause recited. among other things, that in consideration of the plaintiff's surrendering the notes in the amount of $9,900 to the defendants, after marking them paid, the defendants released and relinquished the plaintiff from complying with the non-competition clause. This agreement also contained an obligation on the part of the defendants to execute their note in favor of their widowed sister, Cena C. Carles, in the amount of $4,000, payable in monthly installments of $50. The present suit was instituted on July 6, 1949, approximately five months thereafter, wherein the plaintiff is seeking to set aside the sale of the real estate on the ground of lesion beyond moiety. The plaintiff endeavors to treat the act of sale as a separate transaction and not as one connected with the notarial acts executed

simultaneously therewith. The defense to the suit is to the effect that the three notarial acts, executed simultaneously, should be treated as one transaction and that the true consideration for the transaction may be established by parol evidence. Upon trial of the case, the lower court arrived at the conclusion that the three notarial acts constituted one transaction, involving the transfer of movable and immovable property, and that the doctrine of lesion beyond moiety could not be applied. The plaintiff's suit was dismissed and he has appealed.

The plaintiff takes the position that he only received $3,100 for his interest in the real estate, which had a value of between $13,000 and $15,000, according to the testimony given by real estate experts, and that, such being the ca▨, he contends that the sale of the real estate should be rescinded or set aside because of lesion beyond moiety.

�reduced▨ His contention is based on the ground that the noncompetition clause had a value of $5,900 as it had cost him that much to get released from it in the compromise agreement. After deducting the $5,900 from $9,000, the consideration of the sale, $3,100 would be left, which the plaintiff states is all that he finally received for his interest in the real estate. The testimony regarding the value of the non-competition clause is to the effect that no value was placed on it at the time the plaintiff's interest in the business and real estate was

transferred to his brothers. At that time the plaintiff did not contemplate engaging in the poultry business but intended to enter an entirely different business enterprise. However, this question would be of no import if the two acts of sale, conveying the business and the real estate, executed simultaneously, are considered as one transaction because, in that event, Article 1861, LSA–C.C., dealing with lesion beyond moiety, would not apply. It is significant that in the act of sale conveying the real estate that it is set out: "It is further agreed that if any debts of the business herein described which were incurred prior to June 28, 1948 and are not now known to the parties hereto, shall become known in the future, vendor herein shall, and he obligates himself to, pay his pro rata part, that is, one-third, thereof." It is also significant that the non-competition clause was placed in the act of sale of the realty instead of the act of sale of the business. Both of these clauses have reference to the poultry business. As pointed out heretofore, the act of sale conveying the business contained a clause referring to the fact that the transfer was being executed simultaneously with the sale of the real estate and that the consideration of both transfers was $14,900. The act of mortgage was executed to secure the unpaid balance of the purchase price in the business. These acts are so tied together by their terms that they must be considered as being confected to carry out the agreement of the parties. It appears that these contem-

poraneous agreements were executed to carry out the agreement of the parties that the plaintiff sold and the defendants purchased the plaintiff's entire interest in the realty and business for a consideration of $14,900. In construing these instruments a doubt arises as to whether the entire transaction was consummated for a consideration of $14,900 as one transaction or whether the parties intended to sell or purchase the real estate or the business as separate transactions for separate considerations. Such being the case, the circumstances attending the execution of the contracts and the surrounding circumstances may be inquired into. Plaquemines Oil & Development Company v. State, 208 La. 425, 23 So.2d 171. The real consideration as between the parties themselves may be shown. Linkswiler v. Hoffman, 109 La. 948, 34 So. 34; Davis v. William W. Bierce, 114 La. 663, 38 So. 488; and Cleveland v. Westmoreland, 191 La. 863, 186 So. 593. It was pointed out in the Cleveland case that the true cause or consideration for the making of a contract may be shown by parol evidence if a cause or consideration stated in the contract was not the true cause or consideration. This is especially true when an examination of the three contemporaneous acts, which were confected to carry out the agreement of the parties, show on their face ambiquity as to the real and true consideration for the transfer. The parol evidence is admissible to explain this ambiguity and not to contradict or vary the terms of the agreement.

The testimony relating to the true consideration and the circumstances attending the execution of the acts unquestionably show that the agreement of the parties was that the plaintiff sold his entire interest in the realty and the business for a consideration of $14,900 and that the defendants purchased it for that price. The testimony further shows that the attorney and notary executed the transfers to carry out this purpose and that he suggested that the transaction become confected in three separate acts. The attorney and notary fixed the consideration in the separate acts as a matter of convenience, but it was the agreement of the parties to sell and purchase plaintiff's entire interest in the realty and business for $14,900.00. Insofar as the value of the non-competition clause is concerned, the parties did not place a value on it at the time of the confection of the agreement and must have considered it as of no value because the plaintiff intended to enter into a different business. If they had considered it of any value, the plaintiff would have insisted on an increased consideration. But, be that as it may, the transaction involved movables and immovables and therefore Article 1861, LSA–C.C., dealing with lesion, is not applicable. Recision of sales for lesion beyond moiety is not granted in sales involving movables. Article 2594, LSA–C.C.

It is contended that the parties to the agreement segregated the movables from the immovables and placed a separate value

on each in the transfer and that therefore the parties fixed the consideration given for the immovable property. As pointed out heretofore, the agreement of the parties was that the consideration for plaintiff's interest in the realty and business was $14,-900 and that the attorney and notary drew the acts as he did for convenience and in order that title to the realty be transferred in one act and the business in another when in truth and fact the agreement of the parties was for one consideration for the entire transaction.

For the reasons assigned, the judgment is affirmed at appellant's cost.