HALL, Judge.
Defendants prosecute this appeal from a judgment ordering them to specifically perform their contract with plaintiff by conveying to plaintiff the title to certain described land situated in the Parish of St. Bernard.
Plaintiff is a co-operative association organized under the provisions of Act No. 40 of 1938 (now LSA-R.S. 3:71 et seq.).
On December 10, 1942 defendants entered into a duly recorded written contract with plaintiff denominated as a “Lease with Option to Purchase” whereby defendants leased to plaintiff approximately 3320 acres of trapping land in St. Bernard Parish for a term of ten (10) years commencing December 10, 1942 and ending December 9, 1952, at an annual rental of $4,980.-00 payable on April 1st of each year. The United States Government, through the Secretary of Agriculture, was a party to this agreement inasmuch as a loan was being made to plaintiff association in connection with the development of the subject property.
Paragraph 5. (a) of the lease provided in part as follows:
“5. (a) The Government or the Lessee its successors or assigns shall have exclusive and irrevocable option at any time during the term of this lease to purchase said property upon the following terms and conditions:
“(1) The purchase price of the said property shall be the sum of Thirty-eight Thousand and no/100 ($38,000) Dollars for the property as a whole, provided that in the event the option is exercised at any time during the lease period all rental payments made up to' the date of the exercise of the option shall be applied upon the purchase price,, and it is further agreed that the purchaser will pay to the Lessors the balance due, plus 5% upon the unpaid balance at the time the option is exercised.
* * * * * *
“(8) The Lessors each agree that they will not dispose during the term of this, lease of any mineral rights owned by them and it is mutually agreed that in the event the option is exercised the Lessors may retain not more than one-sixteenth (Visth) of the mineral rights or an over-riding royalty of one-sixteentk (Vieth) on said property.” (Emphasis, supplied)
The Lessee occupied the land and regularly paid the rental due. On March 24, 1949, Mr. Earl J. Ory, representing the Government as County Supervisor of the Farmers Home Administration addressed a letter to Mrs. Lillian K. Kimbrough, agent for the Lessors, sending her a check for $4,980.00 to pay the rental due April 1, 1949, and in the letter advised her that plaintiff herein was ready to exercise the option in the lease and that the balance of the money needed to exercise the option was set aside in the bank, and all that was needed was an abstract of title. He called upon her to have an abstract made (as required by Paragraph 5.(a).(2) of the lease) and to notify him when she would be ready to accept payment and pass title. A copy of this letter was forwarded by Mr. Ory to Mr. Albert B. Koorie, plaintiff’s attorney.
On April 29, 1949, Mr. Koorie advised Mrs. Kimbrough by letter that he would prepare the act of sale for the purchaser and requested that she forward the abstract to him. The abstract furnished by Mrs. Kimbrough was unsatisfactory and Mr. Koorie arranged for the preparation of a proper abstract.
*701 Following delivery of the abstract to him Mr. Koorie on March 23, 1950 notified all of the parties in writing that the act of sale would he passed at his office on March 30, 1950 at 1:30 P.M. before Paul Garofalo, Notary Public.
Up to this point the parties were apparently in agreement.
Both the Lessors and the representatives of the Lessee, together with Mr. Ory, the representative of the Department of Agriculture, met in Mr. Koorie’s office at the appointed time and place for the purpose of executing the sale. The Lessors’ attorney, Mr. Sidney Schoenberger, likewise attended the meeting. The Lessee was represented by Mr. Koorie.
At the meeting a controversy arose over the mineral reservation provided in Paragraph 5.(a).(8), quoted supra. The vendors demanded that the act by which they would convey title contain a reservation in their favor of one-half of the mineral rights. The purchaser objected to this and took the position that the vendors should elect whether to retain “not more than one-sixteenth (%s) of the mineral rights” or to retain “an over-riding royalty of one-sixteenth (fAs) on said property.” The argument over this matter lasted all afternoon and when it was apparent no agreement could be reached that day an instrument was drawn up and signed by all of the Lessor-vendors and the Lessee-vendee. This instrument was witnessed by Mr. Schoenberger and Mr. Ory and was acknowledged before Mr. Koorie, as notary public.
In this instrument the Lessor-vendors acknowledged that the Lessee had tendered them notice that it exercised its option to purchase the property. The instrument further provided that the balance of the sale price due the vendors after giving credit for the rentals paid to date, was the sum of $3,402.69, (including the 5% amounting to $162.03) less the sum of $300.00 “herewith paid and the other deductions, expenses, etc. as provided in said lease and option.” The instrument further recited that the vendors recognize and understand that no further rentals were due on the property and particularly that no rental payment would be due on April 1, 1950, or any time thereafter; that the Lessee was entitled to have the property transferred to it upon tendering to the vendors “the balance of $3,102.69 less expenses etc.;” and that the act of sale transferring the property was to be passed on or before June 1, 1950. This instrument was dated March 30, 1950 and was duly recorded.
The argument over the mineral rights was never resolved and neither party would relinquish their positions. On May 24, 1950 Mr. Koorie notified the vendors that unless title was conveyed to his client by June 1, 1950 he would file suit. The vendors refused to convey title except with a reservation to them in the title of of all the mineral rights.
This suit for specific performance was filed against the owners of the subject property on October 31, 1950. Its progress through the Trial Court was delayed for a variety of reasons and judgment on the merits was not rendered until July 31, 1964. The transcript was not filed in this Court until November 19, 1965.
Defendants base their prayer for reversal of the judgment appealed from on five specifications of error, and in addition have filed in this Court an exception of no cause and no right of action levelled at plaintiff’s petition.
-1-
Defendants’ first specification of error is that the Trial Court erred in refusing to recognize their plea of lesion beyond moiety and in allowing plaintiff’s demands for specific performance.
It will be observed that the option in this case was exercised before the passage of Act No. 154 of 1950 which amended *702 Article 2590 of the Civil Code (LSA-C.C. 2590) by providing that in order to ascertain whether there is a lesion beyond moiety the immovable must be estimated “at the time the option was granted if the sale be made pursuant to a valid contract of option.” Prior to the adoption of the 1950 amendment the Article 2590 contained no provision with reference to options, but the Supreme Court (McCaleb, J. dissenting) had decided in Lakeside Dairies, Inc. v. Gregersen et al., 217 La. 510, 46 :So.2d 752 that where the defense of lesion was raised in the matter of an option the true value of the property was to be ■determined as of the date the option was ■exercised and not of the date of the contract. For this reason all of the expert testimony in this case as to the value of the subject property (except the testimony of Mr. Otto F. Kuebel) relates to its value as of the years 1949-50 when the option ■was exercised. Mr. Kuebel gave an ap-praisal of the property as of 1959.
Mr. J. Wallace Paletou, testifying as an •expert appraiser for the defendants placed the value of the property in the latter -part of 1949 and early 1950 at $18.00 per .acre, making a total valuation of the tract .$59,760.00.
Mr. Kuebel also testified for the defend.ants. His testimony was to the effect that he had made an appraisal for the United States Government in 1959 of some 33,-'000 acres which included the tract in question. His appraisal of $35.00 per acre, ■made nine years after the exercise of the ■option, is obviously immaterial to the issue presented.
Mr. Joseph M. Meraux, plaintiff’s expert appraiser, placed a value of $15.00 per acre on the property as of the latter part of 1949 and early 1950, making a total valuation of $49,800.00 for the entire tract.
Thus it is seen that the option purchase price of $38,000.00 is more than one-half of even the highest valuation ($59,-760.00) placed on the property as of the time of exercise of the option. Defendants’ plea of lesion beyond moiety is obviously untenable.
Defendants however contend that the instant case is like the case of Lakeside Dairies, Inc. v. Gregersen et al., 221 La. 503, 59 So.2d 701, wherein it was determined that since the agreement between the parties in that case provided that if the Lessee should exercise the option $100.-00 out of the stipulated monthly rental of $150.00 was to be applied to the stipulated purchase price of $11,100.00, such provision had the effect of reducing the actual purchase price to the sum of $7,700.00.
We have no such provision in the contract before us. The contract before us provides that all rental paid is to be applied to the purcháse price, notwithstanding which defendants urge us to allocate only a part of the $4,980.00 annual rental to the purchase price and to allocate the remainder to rental of the land, thus inviting us to rewrite the contract of the parties so that it might fit the contractual situation presented in the Lakeside case. Defendants suggest that since trapping land in the area was being rented for $1.00 per acre and since 3300 acres are involved here, we should allocate $3,300.00 per year to rental and only $1,600.00 per year to the purchase price and thereupon we should reduce the stipulated purchase price as was done in the Lakeside case, and thus make their plea of lesion sustainable. Defendants’ contention is obviously without merit. No contention is made that there is anything illegal about the contract before us, and the parties are bound by its provisions. We cannot rewrite it.
Defendants’ other specifications of error do not call for extended discussion.
-2-
Defendants contend that the Trial Court erred in overruling defendants’ motion to dismiss by reason of plaintiff’s failure to respond to defendants’ prayer for oyer.
*703 On April 11, 1951 defendants obtained an order for oyer of a proposed act of sale which Mr. Koorie had prepared for signature on March 30, 1950. In response thereto plaintiff produced two pages of the instrument. Defendants then moved the Court to dismiss the plaintiff’s suit under Code of Practice Article 175 for failure to produce the entire instrument.
The Trial Judge overruled the motion to dismiss stating that a document had been filed and that the sufficiency of the document was a question for the merits. (Later, on the trial of the merits, the remainder of the document was produced and filed with the statement that it had been misplaced at the time of defendants’ prayer for oyer). We find no error in the Court’s refusal to dismiss the suit. We are moreover of the opinion that defendants had no right to oyer of the proposed act of sale since that instrument was not the “document declared upon” nor the title upon which plaintiff’s demand was founded. See Code of Practice Article 175.
-3-
Defendants’ third assignment of error is that the Trial Court erred in overruling defendants’ exception of prematurity and vagueness. Defendants’ brief contains no argument relative to this assignment, and we are of the opinion that the ruling of the Trial Court was correct.
-4-
Defendants’ fourth assignment of error is that the Trial Court erred in overruling their exception and their amended exception of no cause nor right of action. Defendants based their exceptions on certain grounds which they have not argued in this Court and have presumably abandoned. What defendants argue here is that the plaintiff corporation is not a bona fide agricultural co-operative association and not a bona fide plaintiff since its present members (transferees of the original members) are not trappers or in the trapping business.
LSA-R.S. 3:75 provides in part as follows :
“Under the terms and conditions prescribed in its by-laws, an association * * * may admit as members and issue certificates of stock or membership only to persons engaged in the production of agricultural products grown by them and to be handled by or through the association, including the lessees and tenants of lands used for production of such products and lessors and landlords who receive as rent all or part of the crop raised on the leased premises.
“Certificates of stock or membership shall not be transferable and no persons shall acquire by operation of law or otherwise the benefit of membership except as provided in this Section * * * ” (Emphasis supplied)
LSA-R.S. 3:78(10) states that the bylaws of the association may provide for:
“ * * * the method, time, and manner of permitting members to withdraw or permitting the holders of common stock to transfer their stock; the manner of assignment and transfer of the interest of members, and of the shares of common stock * * * ”
LSA-R.S. 3:82 provides in part:
“The by-laws shall prohibit the transfer of the membership or stock of the association to persons not engaged in the production of the agricultural products handled by the association * * * ”
Reading these provisions together we find that there is nothing in the law which prevents the transfer of its certificates of stock or membership. The only limitation upon the present members is that they must meet the qualifications prescribed by LSA-R.S. 3:75.
Defendants made an effort to prove that the present members are not engaged *704 in the trapping business but in our opinion the proof adduced fails to sustain their contention. The proof shows that the present members are engaged in the trapping business. The fact that the present members are not trapping muskrats with their own hands every day and the fact that the trapping business has been poor ever since the storm of 1947 does not necessarily mean that they forfeit their interest in the association.
Moreover we are of the opinion that defendants have no standing to attack the procedural capacity of the plaintiff corporation or its membership. Such an attack can be brought only by the State of Louisiana, or perhaps by one of its members.
-5-
Defendants’ fifth and last assignment of error is that the Trial Judge erred in permitting plaintiff to introduce in evidence the remaining pages of the proposed act of sale of March 30, 1950, which they had not produced in response to defendants’ prayer for oyer. We find no error in the Trial Court’s ruling. (See Subdivision numbered 2 of this opinion.)
Defendants included in their first assignment or error relative to their plea of lesion beyond moiety a contention that the Trial Court erred in allowing plaintiff’s demands for specific performance.
The substance of defendants’ contention on this score is that the mineral reservation clause iii the option to purchase does not reflect the true intent of the parties and is so vague, uncertain and ambiguous that plaintiff is not entitled to the remedy of specific performance.
We find nothing vague, uncertain or ambiguous about the clause. It seems plain to us that defendants have the option of reserving to themselves “not more than one-sixteenth (JÍ6th) of the mineral rights or an overriding royalty of one-sixteenth (Jieth) on said property.” The choice is theirs and they are bound by their contract.
The record reveals that the sole and only reason the act of sale was not passed on March 30, 1950 or June 1, 1950 is because defendants would not make this election, but insisted that they should have reserved to them one-half (14) of all the mineral rights in the property. Defendants contend in their brief that the retention of an overriding royalty by defendants would be meaningless and impossible since they say it is “an interest carved out of the lessee’s share of the oil, as distinguished from the owner’s interest or royalty interest.” We do not feel called upon to discuss this matter, since if defendants feel this choice is foreclosed to them they are at liberty to elect to retain “one-sixteenth (Jiotli) of the mineral rights.”
Defendants filed in this Court an exception of no cause and no right of action based on the proposition that plaintiff’s petition fails to allege the adoption of a resolution by plaintiff’s board of directors authorizing the purchase of the property and authorizing one of its officers to appear and accept title to the property.
Defendants have no interest or urge such an exception. Since this was not a credit sale defendants’ only interest was to receive the cash balance due on the purchase price.
For the foregoing reasons the judgment appealed from is affirmed, defendants-appellants to pay the costs of this appeal.
Affirmed.