O’NIELL, O. J.
 

 This is a suit on a mortgage note for $7,000, dated August 30, 1910, and made payable one year after date. The note and mortgage were given by Rev. Edwin W. Hunter, as rector, and W. E. De Arkland, senior warden, of the religious corporation called St. Anna’s Chapel of the State of Louisiana, under authority of a resolution adopted by the .vestry, which is the governing body, or board of directors, of the corporation. The resolution authorized the rector and senior warden to borrow the $7,000 to pay a balance of $5,995 of a past-due note of the corporation, in the hands of E. N. White-mire, attorney, and to pay any other indebtedness of the corporation that might exist, and with the balance, if any, to repair and improve the property of the church. The mortgage was made in favor of Edmund Wegener, or any future holder of the note, which was made payable to the makers, and indorsed by them, in their capacities, respectively, as rector and senior warden of the church. Rev. Edwin W. Hunter, who is now the plaintiff in this suit, became the owner of the note at the time or soon after it was issued. In fact, we infer from the record that he probably owned the note of $5,995, which was paid out of the proceeds of the $7,000 note. The note of $5,995, was held also by-the attorney, E. N. Whitemire, and the ownership of it, as well as of the $7,000 note, seems to have been a matter of no concern or importance to the vestry of the church. The $7,000 note was left in the possession of Whitemire, and, after his death, was held by James J. McLaughlin, an attorney at law, who also died before this suit was filed.
 

 The suit was brought in the name of Joseph T. Sullivan, as the holder of the mortgage note, and the defendant filed an exception to the effect that Sullivan had no right of action. Rev. Edwin W. Hunter thereupon intervened, and, by an order of court, was substituted as the plaintiff in the suit.
 

 The defendant pleaded payment, and, in the alternative, pleaded the prescription of five years. The judge of the civil district court overruled both pleas and gave judgment in favor of the plaintiff. The defendant has appealed.
 

 The plea of payment, which, as counsel for appellant say in their brief, is more like a plea of compensation, or extinguishment by confusion, than a plea of payment,, is founded upon the allegation that the plaintiff, during the 30 years in which he was rector of the church, collected large sums of money for the church, at different times, and did not use the money for the church, or account for the collections, and that the sums thus collected, if accounted for, would more than extinguish the mortgage note. The attorneys for the plaintiff objected to the introduction of evidence to support the plea of payment, or compensation, on the ground, first, that there was no allegation of any agreement or inténtion of imputing the al
 
 *388
 
 leged collections to the payment of the note;, and, second, that the claim which was pleaded, in compensation was an unliquidated claim— as was virtually conceded by the prayer for an accounting. The judge of the civil district-court sustained the objection and overruled the plea of payment or compensation. The ruling was correct. The plea was not really a' plea of payment, for there was no allegation of any agreement or intention that the alleged collections, by the plaintiff, were to be imputed to the payment of the note. Considered as a plea of compensation, the plea was not good, because the claim so pleaded was an unliquidated claim. Article 2209 of the Civil Code provides: “Compensation takes place only between two debts * * * which are equally liquidated and demandable.” See also Lacoste v. Bordere, 7 Mart. (N. S.) 516; Phelps v. Stone, 3 La. Ann. 617; Hart v. Cannon, 10 La. Ann. 731; Case v. Henderson, 23 La. Ann. 49, 8 Am. Rep. 590; Burbridge & Co. v. Anderson, 32 La. Ann. 877; Goldman v. Goldman & Masur, 47 La. Ann. 1463, 17 So. 881; Franz v. Schiro, 136 La. 841, 67 So. 925; Peterson v. Rabito, 164 La. 612, 114 So. 354.
 

 We agree with the judge of the civil district court that the prescription of five years was interrupted by the repeated acknowledgments, by the vestry of the church, of the debt represented by the mortgage note. A payment of $50 was made and indorsed on the note on the 12th of April, 1915, and a payment of $70 was made and indorsed on the note on the 9th of June, 1920.- The note was payable on the 30th of August, 1911, and the suit was filed on the 25th of October, 1923. The receipt of $50 indorsed on the note on the 12th of April, 1915, was signed by E. W. Hunter, rector, and W. E. De Ark-land, senior warden, and the receipt of $70 indorsed on the note on the 9th of June, 1920, was signed by E. W. Hunter, rector, and-Chris Stander, senior warden. The evidence leaves no doubt that the payments were made on those dates, and the fact is not disputed; but it is contended that the payments were made by Rev. E. W. Hunter, rector, who individually owned the .note, and that the payments were made without the authority or knowledge of the vestry. The evidence leaves no doubt that the vestry knew of the payments and ratified them. The first payment was made within five years after the maturity of the note and therefore interrupted the prescription. The second payment was made more than five years after" the first payment, tfhe acknowledgment of the second payment, indorsed .on the note, reads thus: “Paid on account this note, this 9th of June, 1920, seventy dollars, balance still unpaid six thousand eight • hundred and eighty dollars, all interest still unpaid.” That payment and acknowledgment would not have had the effect of renouncing the prescription, if there had been no acknowledgment of the debt within the five years previous to the second payment, and if,the debt, therefore, was already prescribed when the second payment was made. An acknowledgment of a debt will interrupt prescription not already accrued, but a mere acknowledgment of a prescribed debt is not of itself a renunciation of prescription. Succession of Slaughter, 108 La. 492, 32 So. 379, 58 L. R. A. 408.
 

 In this case, however, the payment of $50, made on the 12th of April, 1915, was acknowledged and ratified by the vestry at a meeting held on the 20th of June, 1915, which was less than five years before the date of the payment of $70; and the latter payment and acknowledgment were made within five years previous to the filing of this suit, and were also "ratified by the vestry of the church. Trial balances, signed by the rector, the senior warden, the junior warden, the secretary,
 
 *390
 
 and in some instances by other members of the vestry, and referring specifically to this mortgage note of $7,000, were taken from the defendant’s books and submitted to the ves-. try, for the following periods, viz.: March 1 to September 30, 1914; October 1 to December 31, 1914; January 1 to April 30, 1915; May 1, 1915, to February 28, 1916; March 1, 1916, to February 28,1917; March 1,1917, to February 28, 1918; March 1 to December 31, 1918; January 1 to December 31, 1919; January 1 to December 31, 1920; January 1 to December 31,1921; and January 1 to December 31,1922. The minutes of the vestry meeting held on the 20th of June, 1920, show that the treasurer submitted his reports for April and May, 1915, together with a trial balance, for the period from January 1 to April 30, 1915. The trial balance for that period contains the item, “Bills payable, 336, $7,000.00.” The figures “336” refer to an old journal, among the books of the church, in which appears the entry: “Note of August 30, 1910, secured by mortgage on rectory, payable one year after date, with eight per cent. Folio 102 —Old Jr. — -See Bills Payable, folio 336.” The treasurer’s report, which was submitted at the meeting of the vestry on June 20, 1915, contained also the item “Offering for bills payable $50.00,” and the minutes contain the statement:
 

 “On mortgage note of $7,000.00 carried in bills payable dated August 30, 1910, $50.00 was paid thereon towards reducing the interest due and credit given on April 12, 1915. This donation of $50.00 was made with the stipulation that the donor’s name be withheld.”
 

 Above that statement appears the item “Bills payable, fo. 336, $7,000.”
 

 In the minutes of the meeting of the vestry on July 25, 1920, it is stated that the treasurer’s report for June, 1920, was read and received by the vestry, and in the treasurer’s report, under the caption “Receipts,” appears an entry, “Balance on hand June 1,1920, $60.-97,” and an entry, “For bills payable, $9.03,” thus making the $70 paid on the mortgage note on June 9, 1920; and, under the caption “Disbursements,” appears the entry, “Bill payable $70.00.”
 

 It is contended — and is quite likely — • that E. W. Hunter procured the two payments on the note for the purpose of interrupting prescription; but the fact that he, the owner of the note, procured the payments, and that it was done for the purpose, of interrupting prescription, did not deprive the payments of their legal effect in that respect, when the payments were made known tó and were ratified by the vestry. Cheeks given in part payment of a debt constitute written evidence of the payment, and have the, effect of interrupting prescription. McGinty v. Succession of Henderson, 41 La. Ann. 382, 6 So. 658. The acknowledgments of the debt, contained in the minutes of the meeting of the vestry, also constituted written acknowledgments,, which serve to interrupt the prescription. The fact that the vestrymen did not know who owned the note did not deprive the acknowledgments of the debt, by the vestry, of their legal effect in regard to the interruption of prescription. An acknowledgement of a debt will interrupt prescription, notwithstanding the acknowledgment is not made to the creditor. Begue v. St. Marc, 47 La. Ann. 1151, 17 So. 700. In this instance the acknowledgments were of a debt represented by a negotiable instrument, the ownership of which was of no importance to the debtor.
 

 The judgment is affirmed.