147 So.2d 37 (1962)
Mrs. Bobbie Jean White Vining BEATTY, Plaintiff-Appellant,
v.
Charles Leroy VINING, Defendant-Appellee.
No. 9774.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1962.
Rehearing Denied November 29, 1962.
Certiorari Denied January 25, 1963.
*39 McIntosh, Hester & Gilfoil, Lake Providence, for appellant.
Voelker & Ragland, Lake Providence, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
This is an action of rescission instituted by plaintiff, former wife of defendant, wherein she prays for the annulment of a voluntary partition of community assets with respect to the title of real estate remaining in defendant, for a proportionate share in the proceeds of property sold subsequent to the partition, and for an accounting of the community assets not partitioned. Plaintiff also seeks to recover judgment of the defendant in the sum of $3,400.00, together with interest and attorney's fees thereon represented by a note of $2,500.00 and a balance on another of $900.00.
Plaintiff and defendant were married August 29, 1932. A judgment of separation a mensa et thoro was signed September 26, 1953, which dissolved the community estate. The partition herein sought to be set aside was consummated September 29, 1953.
The community of acquets and gains resulting from the marriage of these parties consisted of a number of business activities, including the ownership of residential rent property in the Village of Sondheimer, the ownership of two bars, one in Sondheimer and the other in Morehouse Parish, a general mercantile business, a sawmill and a planer mill, cattle business, and general farming. The community owned tracts of approximately 1,620 acres of farm lands in East Carroll Parish, 46 acres in Morehouse Parish, and a 3.6-acre residential tract near Bastrop.
Plaintiff, for a number of years prior to their separation, operated and managed the general store. Defendant was engaged in other business ventures, the major portion of which are indicated above. The family residence, general store, and a 3-apartment colored rental house were located on a tract of less than one acre in the Village of Sondheimer.
Through and by virtue of three instruments executed by the parties, plaintiff acquired, in the partition, the tract of land of less than one acre, together with the residence, store, and the colored rental house. Through the same instruments, the defendant acquired the remainder of the community assets, including 1,520 acres of farm land, a 4-acre tract in Sondheimer on which were located a drug-store building and nine rental residences. Defendant also acquired the 3.6-acre tract and the 46-acre tract in Morehouse Parish, together with a residence located on the former, and a beer and liquor store, with living quarters for the manager, on the latter. Not included by a specific description was a tract of 100 acres which defendant claimed by virtue of a provision contained in the aforesaid instruments where it was recited that the defendant acquired all other real estate which had been acquired by the parties during their marriage, whether specifically described or not. Other assets of which defendant took possession included farm machinery, a sawmill, a planing mill, trucks, a quantity of lumber, a herd of cattle, stocks of merchandise and equipment in two bars, a cotton crop being harvested at the time, two vendor's lien notes in the principal sum of $4,800.00, checking accounts in the aggregate amount of $348.07, and a quantity of household goods.
In connection with the execution of the aforesaid instruments, defendant assumed the payment of all indebtedness bearing upon, *40 or resting against, the property acquired by him.
The basis of plaintiff's primary demand, that is, for the annulment of the partition, is lesion. With respect to partitions, LSA-C.C. Art. 1398 provides:
"They may even be rescinded, on account of lesion; and, as equality is the base of partitions, it suffices to cause the rescission, that such lesion be of more than one-fourth part of the true value of the property."
A definition of lesion as a basis for relief, where one has not received an equivalent in a sale or partition, is contained in LSA-C.C. Art. 1860.
"Lesion is the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. The remedy given for this injury, is founded on its being the effect of implied error or imposition; for, in every commutative contract, equivalents are supposed to be given and received."
The scope of relief against lesion in a partition is limited to situations where
"* * * there is a difference in the value of the portions to more than the amount of one-fourth to the prejudice of one * * * [of] the parties; * * *". LSA-C.C. Art. 1861.
To plaintiff's demands, defendant filed and unsuccessfully urged an exception of no cause of action.
The position urged by defendant in his answer is that plaintiff received her proper share of the community assets; that the indebtedness assumed by him left him a net value in the property less than the value of the property acquired by plaintiff. Defendant further contended plaintiff received a new Plymouth automobile, a diamond ring, and an extraordinary amount of personal clothing. Payment of the obligations represented by the notes also sued upon was pleaded.
After trial, plaintiff was awarded judgment on the promissory note in the principal sum of $900.00 plus interest and attorney's fees, but otherwise her demands were rejected; she was condemned to pay two-thirds of the cost of court. The decree also overruled a plea of prescription filed by plaintiff directed at a debt alleged by defendant to be due and owing to one J. O. ("Red") Willett. Both plaintiff and defendant have appealed from the judgment.
The defendant re-urges the exception of no cause of action and contends that an award of a money judgment against him was error.
Plaintiff complains of the action of the court (1) in overruling a plea of prescription as to the debt purportedly due to J. O. ("Red") Willett; (2) in permitting parol evidence to be introduced contradicting, altering, and varying the written articles of partnership in commendam between defendant and one George Wall, as well as the settlement entered into between them, and, as a consequence, in finding that all property in East Carroll Parish acquired by the defendant after the formation of the aforesaid partnership belonged to and was owned by said partnership and not by the community existing between plaintiff and defendant despite declarations in deeds of acquisition that, at the time the defendant acquired said properties, he was married to plaintiff; (3) in permitting the introduction of a financial report of a certified public accountant as to the financial affairs of plaintiff and defendant as of the date of the dissolution of their marriage, based upon self-serving declarations of the defendant and constituting hearsay and matters of opinion; and (4) in its conclusions as to the evaluation of the community estate and as to the portions received by each of them therefrom, and in its findings as to the community debts.
*41 First, logically, for consideration, is defendant's exception of no cause of action. The basis of this exception is twofold: (1) that the instruments alleged to constitute a partition of the community estate between plaintiff and defendant are in reality sales, and (2) that, as such sales, which include both real and personal property, the law with reference to rescission of partitions has no application to them; nor may a rescission of a sale be had for lesion where movables are involved. Cited in support of this contention is the case of Corona v. Corona, 221 La. 576, 59 So.2d 889.
This authority is without application to the facts of the instant case. There, a partner sold his interest or share in a partnership business, including land, to the remaining partners. The transaction involved both movables and immovables. Accordingly, it was held that LSA-C.C. Art. 1861, with reference to lesion as concerns sales, had no application inasmuch as a rescission of a sale, because of lesion beyond moiety, is not granted in sales involving movables. LSA-C.C. Art. 2594.
In the instant case, the instruments, while, in form, partake of the nature of sales, no price or consideration in cash is shown. The instruments, however, recite that the sale "* * * is made for the consideration of the sale by the Vendee herein of her entire right, title, and interest in and to other real properties in East Carroll and Morehouse Parishes, deed having been executed simultaneously herewith, the receipt of which is hereby acknowledged."
The transaction between plaintiff and defendant in the instant case can be characterized only as an act of partition. Regardless of the form of an act, the rule is well established in the jurisprudence that every first settlement between heirs or partners of which a state of indivision is terminated is, in substance, a partition, even though the instruments have the form and appearance of sales. Westover v. Aime, 11 Mart. (O.S.) 443; Tippett v. Jett, 3 Rob. 313; Tyson v. Spearman, 190 La. 871, 183 So. 201, 205; Stone v. Jefferson, 196 La. 1057, 200 So. 461, 463.
The limitation of the right to rescission of sales extending only to immovables has no application to partitions. Thus, a partition involving both movables and immovables may be rescinded. LSA-C.C. Art. 1861.
The exception of no cause of action was, therefore, properly and correctly overruled.
Next for disposition is plaintiff's plea of prescription directed to the debt in an amount of $15,398.26 alleged by defendant to have been owed by the community to J. O. ("Red") Willett at the time of its dissolution. This alleged indebtedness is predicated upon an open account which existed prior to January 1, 1949. No payment was made on this account; nor was any acknowledgment shown to have been made prior to the date of plaintiff's and defendant's judicial separation. Therefore, more than four years and eight months elapsed after this obligation was allegedly incurred before their separation. This debt was clearly prescribed and extinguished by the prescription of three years under LSA-C.C. Art. 3538 before the community of acquets and gains was dissolved.
Plaintiff was fully authorized and empowered to plead the aforesaid prescription. LSA-C.C. Art. 3466 provides that
"Creditors and all other persons, who may have an interest in the acquiring of an estate, or the extinguishment of an obligation by prescription, shall have a right to plead it, even in case the person claiming such estate, or bound by such obligation, should renounce such right of prescription." (Emphasis supplied.)
That the debt was of doubtful validity may also be pointed out. It was charged off by the creditor in 1949.
The alleged payment of $600.00 on the account through the delivery of a quantity *42 of lumber in 1954, after the decree of separation, is ineffective to take the debt out of prescription which had already accrued. There was no written acknowledgment or promise to pay so as to take the debt out of prescription already accrued, as required by the provisions of LSA-C.C. Art. 2278.
It has been held that
"* * * a mere acknowledgment is not sufficient for the purpose, (to renounce an acquired prescription), even if accompanied by payment on account of the debt. There must be a new promise made to pay the debt in order to nullify an accrued prescription. * * *" (Parentheses and emphasis supplied.) Burdin v. Burdin, 171 La. 7, 129 So. 651, 655.
See, also: Succession of Slaughter, 108 La. 492, 32 So. 379, 58 L.R.A. 408; Sullivan v. St. Anna's Chapel, 168 La. 383, 122 So. 118; Hobson v. Edelston, La.App. Orleans, 1943, 13 So.2d 141, 143-144; Glass v. Holoman, La.App. 2d Cir., 1940, 197 So. 438 (writs denied).
The plea of prescription should have been, and it is now, accordingly, sustained, and the alleged indebtedness is eliminated from all further consideration.
Attention must be directed to the partnership in commendam formed by George Wall and the defendant, Charles Leroy Vining. Wall, through his purchase jointly with the defendant, on August 5, 1941, became the owner of an undivided one-half interest in the small tract comprising less than an acre of land in the Village of Sondheimer upon which plaintiff's and defendant's residence and general mercantile store were located. By virtue of the articles of partnership dated February 13, 1940, Wall became a partner in commendam with the defendant. The purpose of this partnership was "* * to carry on a general mercantile business at or near Sondheimer in the Parish of East Carroll, State of Louisiana, and to carry on a fur business, a poultry, livestock, and cattle business, and a general farming business in the said Parish of East Carroll, State of Louisiana." The agreement provided that Wall would provide the defendant with the sum of $5,100.00, $3,100.00 of which had already been furnished, leaving $2,000.00 to be furnished on or before March 1, 1942, in consideration of which Wall would receive a one-half share in the profits of the partnership business conducted by the defendant. Wall's losses were limited to the amount of capital furnished or contracted to be furnished. Subject to that limitation, the profits and losses of the partnership were to be shared equally. In computing the profits or losses, a provision was made for the payment to the defendant of $125.00 per month, which would be accounted for as partnership expenses.
Thus, we may observe that, of the property which plaintiff anticipated receiving in full ownership in partitioning the community estate, Wall was an owner of an undivided one-half interest therein. This interest included the lot upon which the residence, store, and the business itself were located.
The partnership, however, was dissolved July 28, 1954, by mutual consent of the partners expressed in a notarial act, and, further, by the execution of a deed from Wall to the defendant covering the one-half interest of Wall in and to the lot and improvements thereon, for a recited consideration of $3,000.00, and by a bill of sale of movable property described as all stock, merchandise, fixtures, furniture, etc., "located in, on and upon the real property." Also included in the aforesaid transfer was a purported open account of $1,900.00 owed by the partnership to George Wall. The consideration of the execution of this bill of sale was recited as $4,000.00 cash.
Nowhere in any of these instruments is there a stipulation or provision to the effect that Wall would share in any property acquired by Vining after the creation of the partnership. Of concern, however, is plaintiff's *43 objection and the court's admission in evidence of verbal testimony contradicting, altering, and varying the recitals and stipulations of the articles of partnership, the agreement as to its dissolution, and the deed and bill of sale executed in accordance with the agreement to dissolve the partnership.
The verbal evidence given by Vining and Wall, objected to by plaintiff, would, if believed, have established Wall's one-half interest in the afterward-acquired properties even though there were no recitals to that effect in the deeds of acquisition. Such evidence would have, likewise, established, if believed, that defendant, subsequent to the judgment of separation, purchased Wall's one-half interest in all of such properties for a price of $25,000.00. This, he was said to have done without the execution of any instrument confirming or evidencing such fact. These things, defendant would have the court believe despite the fact that Wall invested only $5,100.00, and despite the further fact, as shown by the deed and the bill of sale, defendant had paid Wall $7,000.00 in cash for his interest in the mercantile establishment and for the lot upon which it and other improvements were located.
The properties primarily concerned in Wall's purported one-half interest, consisting of 1,620 acres of land, were acquired by defendant while he and his wife were living together under a regime of a community of acquets and gains. The deeds by which these properties were acquired, with one possible exception, recited that defendant was married to and living with plaintiff as his wife. The possible exception referred to is a quitclaim from the United States of America. To that instrument, a certificate reciting defendant's marital status, executed by a representative of the Government, was attached.
The deeds contain no recitals to the effect that the properties were not acquired as assets of the community of acquets and gains existing between plaintiff and defendant. Therefore, these properties are not only presumed but are, so far as the wife is concerned, conclusively presumed to be assets of the community formerly existing between her and her husband. LSA-C.C. Arts. 2402, 2405; Hall v. Toussaint, 52 La. Ann. 1763, 28 So. 304; Succession of Muller, 106 La. 89, 30 So. 329; Sharp v. Zeller, 110 La. 61, 34 So. 129; Sanderson v. Frost, 198 La. 295, 3 So.2d 626; Slaton v. King, 214 La. 89, 36 So.2d 648; Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582; Succession of Chapman, 225 La. 641, 73 So.2d 789; Lazaro v. Lazaro, La.App. Orleans, 1957, 92 So.2d 402.
Under a regime of a community of acquets and gains, husband and wife own equal shares in the assets thereof. Title vests in them at the very instant such property is acquired. Thus, the wife is vested with ownership of one-half of the community property from the moment of its acquisition. Her ownership is real and is of equal dignity to that of the husband. The theory of the civil law is that the acquisition of all property during marriage is due to the joint or the common efforts of both husband and wife. The wife's rights in the community do not rest upon the gratuity of the husband. Nor is her interest a mere expectancy or a hope; her title and rights are not brought into existence through her husband's death or through a dissolution of the community in any other manner. The law's investiture of the husband with broad powers as head and master of the community by no means negatives or limits the wife's interest as a co-owner or affects her title to an undivided one-half interest in all community property from the very moment of its acquisition. LSA-C.C. Arts. 2399, 2402; Succession of Wiener, 203 La. 649, 14 So.2d 475; Phillips v. Phillips, 160 La. 813, 107 So. 584; Dixon v. Dixon's Executors, 4 La. 188, 23 Am.Dec. 478.
Parol evidence is not admissible to contradict, alter, vary, add to, or to subtract from the stipulations of a written contract (in this case, the articles of partnership *44 executed in notarial form by Vining and Wall), complete on its face, in the absence of the establishment of fraud or error in confection of the contract. (There were neither allegations nor proof as to either fraud or error.) LSA-C.C. Arts. 2234, 2236, 2276. The aforesaid rule as to the exclusion of parol testimony applies between the parties to the instrument and their privies. "Privy" is defined as "Any of those persons having mutual or successive relationship to the same right of property; a person having an interest in any action or thing, esp. one having an interest derived from a contract or conveyance to which he is not himself a party; * * *." Webster's New International Dictionary, Second Edition.
Therefore, the question of admissibility of parol evidence to contradict the written articles of partnership resolves itself as to whether plaintiff was a privy to that contract. It appears to us there can be no question of that fact. Through that contract, rights belonging to the community were created and obligations incurred on behalf of the community. As defendant was bound as a partner, so was plaintiff. In the event of the husband's death or upon the dissolution of the community in some other manner, the wife, as the owner of a one-half interest in the community and a beneficiary under the contract, would have been obligated for a settlement of such partnership and the payment of any obligations found to be due him thereunder.
The income and benefits derived from the partnership were community assets of which the wife was owner of one-half. This interest was included in the common pledge of the community assets for the payment of the community debts. Included are such obligations as may have been incurred by the community to Wall.
A wife, as heretofore observed, acquires her interest and title to community property the instant it is acquired in the husband's name; she succeeds immediately to her ownership. She is, therefore, directly concerned, interested in, and a privy to all acquisitions of property for the community estate. Moreover, she is a privy to all contracts executed for the community by her husband as head and master of the community. Because of such relationship, plaintiff is entitled to the enforcement of the articles of partnership as written. To maintain the integrity of the contract, she has an interest in urging objections to inadmissible testimony which would adversely affect her rights. Moreover,
"Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immoveable [sic] property thus sold." (Emphasis supplied.) LSA-C.C. Art. 2275.
In this connection, it may be pointed out that the record is barren of any showing that Wall was ever delivered possession, or at any time had possession, of any of the property to which he claims part ownership under the partnership agreement.
In Harvey v. Richard, 200 La. 97, 7 So. 2d 674, 677, it was stated:
"`The sale of a thing belonging to another person is null * * *' (Article 2452 of the Revised Civil Code), and `It is axiomatic under the law and jurisprudence of this state that parol evidence is inadmissible to create a title in one who never owned the property * * *' (Ceromi v. Harris, 187 La. 701, 175 So. 462, 464, and the authorities therein cited), except where the record owner confesses when interrogated under oath that the property belongs to the claimant, and, in those instances, only when actual delivery of the property has been made to the claimant. Articles 2275, etc., of the Revised Civil Code. See, also, Bach v. *45 Hall, 3 La. 116; Hagan v. Hart, 6 Rob. 427; Bauduc v. Conrey, 10 Rob. 466; Marionneaux v. Edwards, 4 La.Ann. 103; Heiss v. Cronan, 12 La.Ann. 213; Wright-Blodgett Co. v. Elms, 106 La. 150, 30 So. 311; Ruth v. Buwe, 185 La. 204, 168 So. 776; 2 L.L.R. 387; and 3 L.L.R. 427." (Emphasis supplied.)
Therefore, upon the authority of the provisions of the Civil Code and under the well-established jurisprudence of this State, plaintiff's objection to the admissibility of the parol testimony, coming from Wall and Vining and offered for the purpose of showing that Wall had acquired, under the articles of partnership, an undivided one-half interest in and to all the properties acquired by Vining in East Carroll Parish subsequent to the creation of the partnership, was meritorious and well-founded and should have been, and is now, sustained.
We find that plaintiff has not sustained any substantial prejudice through the ruling of the court admitting in evidence a financial report of the affairs of C. L. and Bobbie Jean Vining as of September 26, 1953. Considerable information contained in the report, no doubt, constituted hearsay or matters of which the accountant had no personal knowledge. To that extent, the report was clearly inadmissible and, as to such matters, has not been considered.
Lastly for disposition is the matter of the appraisals and evaluations of the community estate existing between plaintiff and defendant as of September 29, 1953. This, of course, entails a marshaling of the assets and liabilities as of that date.
In all questions of lesion the value of the property which was the subject of the contract at the time it was entered into is the criterion by which lesion is to be ascertained. LSA-C.C. Art. 1871. The burden of proof is upon the complaining party to prove (1) the value of the property sold in the state in which it was at the time of the contract, according to the usual terms of credit given on sales of that nature, and (2) the difference between such value and the price received. From such difference, a determination must be made as to whether the lesion is sufficient to invalidate the contract. LSA-C.C. Art. 1870.
Value, as herein referred to, means market value, which term, in turn, means the fair value of the property as determined by one willing to sell and one willing to buy under usual and ordinary circumstances. Henderson v. Dyer, La. App. 1st Cir., 1953, 68 So.2d 623 (writs denied); Martin v. Mays, La.App. 1st Cir., 1961, 127 So.2d 77 (writs denied). In determining the value of property which is the subject of an action in rescission, because of lesion, the testimony of each witness qualified and accepted as an expert should be given effect if and when it appears to be grounded from the standpoint of sincerity and good sense. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; Domino v. Domino, 233 La. 1014, 99 So.2d 328; State v. Grand Consistory, Etc., 237 La. 1005, 112 So.2d 692. The rule noted hereinabove, however, applies only when opinions are well grounded from a standpoint of good reasoning. State of Louisiana Through Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881; State Through Department of Highways v. Barber, 238 La. 587, 115 So.2d 864; State Through Department of Highways v. Stoer, 238 La. 718, 116 So.2d 498; State Through Department of Highways v. Fridge, La.App. 1st Cir., 1961, 135 So.2d 325, 329.
With these principles in mind, attention will be first given to the appraisals of the real property which was a subject matter of the partition sought to be herein rescinded. The realty consisted of 17 tracts in East Carroll Parish, Louisiana, numbered, for convenience, 1-17, inclusive, and two parcels of land in Morehouse Parish comprising 46 acres and 3.6 acres, respectively. Of the 17 tracts, nine of those numbered 1-9, inclusive, consisting of 1,097.6 acres, *46 are in one group and segregated from tracts numbered 10-16, inclusive. The nine tracts of the first group were sold by defendant in as many sales between December 10, 1953, and May 15, 1957. The second group, consisting of the seven tracts last mentioned, comprising 527 acres, plus drug-store property, was retained by defendant. Tract 17 was the property acquired by plaintiff in the partition.
In making their appraisals, plaintiff utilized the services of W. Dewey Baker and F. A. Babb, while the defendant employed John D. Blue, J. R. Dillard, and M. E. McBride. McBride testified only as to tracts numbered 1-8. His appraisal of these was $12,656.38. The evaluations placed upon the first group of nine tracts is shown by the following tabulation:

 W. Dewey Baker $63,432.30
 F. A. Babb 61,328.00
 John D. Blue 17,904.69
 J. R. Dillard 20,906.00

The consideration for the sales of these tracts, as heretofore mentioned, aggregated $89,510.00, $1,300.00 of which was paid in cash, leaving a balance of $88,210.00 secured by vendor's liens and special mortgages payable in 20 years. Of the aforesaid credit portion of the sales price, $40,100.00 draws 6% per annum interest and $48,110.00 of said amount earns 5% per annum interest. These obligations recite that the interest is payable annually.
A certified public accountant, as a witness for the defendant, undertook to calculate the present value of the aforesaid credit portion of the aforesaid sale prices payable at the end of 20 years. The method employed was one customarily used in finding the present value of an obligation payable in the future. However, the calculation did not take into account that the interest was payable annually and that, at the maturity of the notes, more interest would have been paid than the principal of the obligations. When questioned, the witness was unable to account for his failure to include interest and made no calculation predicated upon the payment of interest annually.
Obviously, if an obligation payable in the future is discounted at the rate of interest it bears, as was the case here, the interest earned and payable annually would compensate for or offset the deductions made. Moreover, the interest in the sum of $4,811.50, calculated on the aforesaid obligations and payable annually over a period of 20 years, would itself earn, at the legal rate over an average period of the term for the payment of interest of 9½ years, the sum of $45,709.25. The accountant's calculation would have been, we think, correct had the notes borne interest only from maturity; but we think the calculation is erroneous when the payment of interest annually was not taken into consideration.
The expert witnesses for plaintiff took into account, in making their appraisals, an increase in value of property between the dates of plaintiff's and defendant's judicial separation and the division of their estate, and the dates of the sales of the property subsequently made by defendant.
We see no need or necessity to enter into a prolonged discussion of the characteristics of the properties involved or of the reasons advanced by the appraisers in reaching their conclusions as to the value of the property. We think, as illustrated hereinabove, the appraisals made by plaintiff's witnesses are predicated upon a sound basis and are well grounded from the standpoint of sincerity and good sense. Moreover, a proper calculation of the present value of the securities received by defendant when consummating the sales would substantiate these conclusions. We find no basis upon which we could reach an accord with defendant's witnesses' appraisals of the aforesaid portion of plaintiff's and defendant's estate. Therefore, we conclude that the nine tracts of property sold by the defendant had a value at the time of plaintiff's and defendant's judicial separation, *47 and on the date of the execution of the partition agreement three days later, of $60,000.00.
The appraisals as to the second group, consisting of seven tracts of land numbered 10-16, inclusive, tabulated, are as follows:

 Babb Baker Blue Dillard
 #10 (160 A.) $ 6,400.00 $7,200.00 $2,400.00 $2,800.00
 #11 (100 A.) 3,500.00 4,500.00 1,500.00 1,750.00
 #12 (103 A.) 3,600.00 4,120.00 2,317.50 2,060.00
 #13 ( 80 A.) 2,800.00 2,800.00 1,200.00 1,400.00
 #14 ( 80 A.) 3,200.00 4,000.00 1,200.00 1,400.00
 #15 ( 4 A.) 10,000.00 5,500.00 -- --
 #16 (Store bldg.) 5,000.00 4,750.00 -- --

After giving thorough consideration to the testimony of all the witnesses, we conclude that each of the parcels of land had a value, on September 29, 1953, as follows:

 #10 ----------------- $6,400.00
 #11 ----------------- 3,500.00
 #12 ----------------- 3,600.00
 #13 ----------------- 2,800.00
 #14 ------------------ 3,200.00
 #15 ------------------ 8,000.00
 #16 ------------------ 4,750.00

Tract 11, comprising 100 acres described as the
S ½ of NW ¼ and the E ½ of NW ¼ of NW ¼, Sec. 30, T. 19 N., R. 12 E.,
was not specifically described in the partition deeds. Defendant's claim to title of this tract is based on the provisions of the partition deeds, heretofore referred to, which purported to convey to the defendant all properties acquired by plaintiff and defendant during their marriage, whether such property was described or not in the acts of partition.
In order for a deed to be translative of title, there must be some sort of a description of the land so that it may be identified. Richardson & Bass v. Board of Levee Commissioners, 226 La. 761, 77 So.2d 32; Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225.
Therefore, we conclude that plaintiff's interest in the aforesaid tract was not transferred to defendant in the act of partition and, hence, that this property is owned by them in equal proportions.
The community property located in Morehouse Parish was appraised by George H. Goodwin, of Bastrop, a realtor of many years' experience. The evaluation placed on the 3.6-acre tract was $4,000.00 for the lot and $7,500.00 for the improvements. This tract is located three miles from the center of Bastrop and fronts 443.6 feet on a main highway leading to Oak Grove. A new residence on this property was under construction at the time of the parties' separation. Goodwin also appraised the 46-acre tract on Beouf River at the sum of $6,000.00. These evaluations were not challenged except in the latter instance by a carpenter, placed on the stand by defendant, who testified that the residence, while under construction at the time of the separation, was completed soon after Halloween. However, the materials for the completion of this improvement were furnished by defendant from his mill at Sondheimer. Goodwin's appraisals were predicated largely upon comparable sales. From the testimony that the improvements were incomplete on the property on September 26, 1953, we are of the opinion that a value of $12,500.00 would be more in keeping with the market value.
*48 It may be pointed out that Lots 12 and 14 have also been disposed of by defendant since the institution of this action, as were the 46-acre tract and a portion of the 3.6-acre tract in Morehouse Parish. Hence, the values of these tracts must be added to those of Tracts 1-9, inclusive.
Thus, there are left of the tracts obtained by defendant only those numbered 10, 13, 15, and 16, which have a total valuation, as herein tabulated, of $21,950.00.
The property described as Tract 17, comprising an area of less than an acre, together with the store building, residence, rental property situated thereon, and the stock of merchandise of the business conducted thereon, had a value, for the whole, of $16,000.00, according to plaintiff's testimony, $8,000.00 of which was designated as the value of the lot and $8,000.00 as the value of the merchandise and fixtures. This property was owned by defendant in partnership with George Wall. Therefore, plaintiff owned, in her own right, only a one-fourth interest, as did the defendant. Hence, in the partition agreement, she received only an undivided one-half interest valued at $8,000.00.
The record of testimony, corroborated and substantiated by an income tax return and the accountant's report offered in evidence by the defendant, established, at the time of plaintiff's and defendant's separation, the existence and the evaluation of the following movable and intangible assets of the community existing between plaintiff and defendant:

 A vendor's lien note of Vollie J. Nugent dated
 March 31, 1949, in the sum of $3,000.00 secured
 by special mortgage on 60 acres of land, bearing
 6% per annum interest, payable annually
 from date and maturing in 20 years $3,000.00
 Interest accruing from March 31, 1949, to
 September 26, 1953 810.00
 _________
 Value of noteprincipal and interest as of
 September 26, 1953 $ 3,810.00
 A vendor's lien note of Archie L. Ingram dated
 December 22, 1945, for $1,800.00, bearing 6%
 per annum interest, payable annually $1,800.00
 Interest accrued to September 26, 1953 680.56
 _________
 Value of noteprincipal and interest as of
 September 26, 1953 2,480.56
 Dragline and accessory equipment $1,000.00
 Herd of cattle 1,800.00
 Plymouth automobile 1,026.04
 Diamond ring 300.00
 Stock of merchandise in Beouf River bar 1,400.00
 Planer mill 1,000.00
 Bank accounts in names of both plaintiff and
 defendant 416.28
 Household goods 1,000.00 7,942.32
 _________ _________
 TOTALmovables and intangibles $14,232.88

The household goods were divided between plaintiff and defendant. She also received the Plymouth automobile and the ring. Of the bank accounts, $68.71 was deposited *49 under her name. Community debts were stipulated in the sum of $8,447.88. Reservation to offer proof of additional community indebtedness was made by defendant. No substantial proof was made of any other indebtedness. This was defendant's burden. Hill v. Hill, 115 La. 489, 39 So. 503.
From the foregoing, we may now calculate the value of the community estate as of the date of plaintiff's and defendant's judicial separation and as of the date of the passage of the acts of partition. The value of the portions of the property acquired by each of the parties in said partition may likewise be determined.

 Real estate:
 1. Property sold by defendant after partition:
 a. Tracts 1-9, incl., at $60,000.00
 b. Tracts 12 and 14 at 6,800.00
 c. Two tracts, Morehouse
 Parish 12,500.00 $ 79,300.00
 __________
 2. Four tracts (10, 13, 15, & 16)
 retained by defendant $21,950.00
 3. Tract 17, one-half interest 4,000.00
 4. Tract 11, not partitioned 3,500.00 29,450.00
 __________ ___________
 TOTALreal estate $108,750.00
 5. Movables, personal property &
 intangibles listed above $14,232.88
 6. Stock of merchandise, fixtures,
 and equipment in store, one-half
 interest 4,000.00 18,232.88
 __________ __________
 7. Gross value of estate $126,982.88
 8. Less community debts 8,447.88
 ___________
 9. Net value of estate $118,535.00
 10. Value of property received by
 plaintiff in partition:
 a. One-half interest, Tract 17 $ 4,000.00
 b. One-half interest in
 merchandise, furniture and
 fixtures of store 4,000.00
 c. One-half interest in
 household goods 500.00
 d. Plymouth automobile 1,026.04
 e. Cash in bank 68.71
 f. Diamond ring 300.00 9,894.75
 __________ __________
 11. Net value of remainder of
 estate after deduction of portion
 acquired by wife $108,640.25
 12. Less value of property not
 partitioned 3,500.00
 ___________
 13. Value of property acquired by
 defendant in the partition $105,140.25
 ===========

Obviously, from the aforesaid calculation, plaintiff has sustained such lesion as entitles her to a rescission of the partition.
*50 In calculating, from the above tabulation, plaintiff's interest in the realty acquired by defendant in the partition and later sold to third persons, and in the movables likewise received by him, we base our findings upon the following facts:

 1. Value of the immovables so received and sold by the
 defendant $79,300.00
 2. Value of movables likewise received by the defendant 14,232.88
 TOTAL VALUE of property so received by defendant __________
 in the partition $93,532.88
 ==========
 3. Plaintiff's one-half community interest in the property
 so received by the defendant $46,766.44
 4. Less value of property acquired by plaintiff in the
 partition 9,894.75
 __________
 $36,871.69
 ==========

Thus, the aforesaid sum of $36,871.69 represents one-half the net value of the real estate acquired by defendant in the partition and later sold to third parties, and one-half of the net value of the movables, personal property, and intangibles likewise acquired by the defendant in excess of the value of property received by plaintiff in the partition. The defendant therefore owes plaintiff the aforesaid sum and she should have judgment therefor.
Where property acquired by one of the parties in an act of partition has been sold prior to the institution of an action for a rescission, the original vendee has a personal responsibility to the vendor. Where a husband sold a portion of property received in a partition of a community estate, an action by the former wife for a rescission of the partition is limited to the property the husband acquired in the partition and of which he remained the owner. An action to rescind, because of lesion, does not extend to good-faith purchasers. The aggrieved party is, however, entitled to a personal judgment against the other for one-half of the market value of the property so sold, evaluated as of the date of the partition. Snoddy v. Brashear, 13 La.Ann. 469, 471; Morgan v. O'Bannon & Julien, 125 La. 367, 51 So. 293; Wilkins v. Nelson, 155 La. 807, 99 So. 607.
In citing the foregoing authorities, this court, in the instant case, on an appeal from a judgment of dismissal of plaintiff's action, 126 So.2d 846, 848, made this observation:
"It is true that plaintiff has coupled with her principal demand for rescission an action for the value of properties sold by defendant, and for a necessary accounting in connection therewith. We think this demand is eminently appropriate under our jurisprudence which restricts the action for rescission to the original vendee, forbidding the action against his purchasers; * * *. It must be noted that although the opinion in Snoddy v. Brashear, supra, denies the action against a good faith purchaser, it specifically stated that the original vendee remained personally liable:
"`We will merely say for the present that we adhere to the opinion that the action of lesion does not extend to third persons purchasing in good faith from the vendee; and that Brashear must be held personally responsible, if there was lesion, * * *.'"
*51 See, also: Hill v. Hill, supra.
However, in instances such as this and so far as the property retained by the purchaser is concerned, he may elect to either surrender the property or have the sale confirmed on paying its full value. LSA-C.C. Arts. 1877, 2591; Smart v. Bibbins, 109 La. 986, 34 So. 49; Fernandez v. Wilkinson, 158 La. 137, 103 So. 537; Johnson v. Johnson, 191 La. 408, 185 So. 299; Blaize v. Cazezu, 210 La. 176, 26 So.2d 689.
Therefore, as to Tracts 10, 13, 15, and 16, as will be described in the decree, the defendant has the option of either surrendering each of said tracts separately or of supplementing the price of each to the extent of the value as herein determined.
In connection with defendant's obligation to support a minor daughter, defendant executed his promissory note for $2,000.00, payable to plaintiff in consecutive monthly installments of $100.00 each, beginning November 1, 1953. Eleven installments were paid. Plaintiff is entitled, as found by the trial court, to judgment for the unpaid balance of $900.00 plus interest and attorney's fees.
For the reasons herein assigned, the judgment appealed is annulled, avoided, reversed, and set aside, except as hereinafter noted; and
It is now Ordered, Adjudged, and Decreed that the partion under date of September 29, 1953, of the assets of the community estate, formerly and until September 26, 1953, existing between plaintiff and defendant be, and the same is hereby, annulled, avoided, set aside, and recast so as to read as follows:
It is therefore Ordered, Adjudged, and Decreed that plaintiff, Mrs. Bobbie Jean White Vining Beatty, and defendant, Charles Leroy Vining, be, and they are hereby, decreed the owners in indivision, in equal proportions, of the following-described property, to-wit:
S ½ of NW ¼ and E ½ of NE ¼ of NW ¼, Sec. 30, T. 19 N., R. 12 E., Louisiana meridian, containing 100 acres more or less, together with the improvements thereon and appurtenances thereunto belonging, situated in East Carroll Parish, Louisiana
Further, it is Ordered, Adjudged, and Decreed that the true and market value of so much of the land herein involved and identified in the record as Tract 10, described as follows:
W ½ of NE ¼ and the W ½ of SE ¼, Sec. 30, T. 19 N., R. 12 E., Louisiana meridian, containing 160 acres more or less, together with the improvements thereon and appurtenances thereunto belonging, situated in East Carroll Parish, Louisiana,
be, and the same is hereby, fixed and determined at the sum of $6,400.00; and that portion herein involved, identified in the record as Tract 13 and described as follows:
N ½ of SW ¼, Sec. 8, T. 19 N., R. 12 E., in the north of Red River Land District, Parish of East Carroll, State of Louisiana, together with the improvements thereon and appurtenances thereunto belonging, containing 80 acres more or less,
be, and the same is hereby, fixed and determined at the sum of $2,800.00; and that certain piece or parcel of land lying and being situated in the unincorporated Village of Sondheimer, identified in the record as Tract 15 and described as follows:
Beginning at the intersection of the south line of Sec. 45, T. 18 N., R. 13 E., with the western boundary of U. S. Highway 65, also known as Louisiana Highway 3; run thence west 360 feet to a point; thence north 528 feet to a point; thence east 260 feet to the western *52 boundary line of U. S. Highway 65, also known as Louisiana Highway 3; thence south along the western boundary of said U. S. Highway 65, or Louisiana Highway 3, to the point of beginning, containing 4 acres, more or less, as reserved in the Act of Sale from Allen T. Phillips to Eugene V. Parker dated October 15, 1945, which was filed for record and recorded as Register No. 3483 on October 16, 1945, in Conveyance Book "WW" at page 477 of the Records of East Carroll Parish, State of Louisiana, less and except therefrom the following-described piece or parcel of said tract with all the buildings and improvements thereon optioned under date of May 10, 1946, by Allen T. Phillips to Walter Vickery, which said option contract was filed for record and recorded on May 13, 1946, as Register No. 4193 in Conveyance Book "XX" at page 261 of the Records of East Carroll Parish, State of Louisiana, to-wit:
Begin at the intersection of the southern boundary line of Sec. 45, T. 18 N., R. 13 E., where said southern section boundary line strikes the western boundary of U. S. Highway 65 in Sondheimer, Louisiana; from said point of intersection and beginning point of this description, run thence in a northeasterly direction along the western boundary of said U. S. Highway 65, the distance of approximately 191 feet to a point on the western boundary of said U. S. Highway 65, which point is approximately 13 feet north of the northeast corner of the "Walter Vickery" store building; thence run in a westerly direction along the north edge of an old scale pit in a line parallel with the southern boundary line of Sec. 45, the distance of approximately 231 feet; thence run south at right angles approximately 178 feet to the southern boundary line of Sec. 45, and thence along the southern boundary line of said Sec. 45, the distance of approximately 360 feet to the point of beginning;
be, and the same is hereby, fixed and determined at the sum of $8,000.00; and that portion herein involved situated in the Parish of East Carroll, State of Louisiana, identified in the record as Tract 16 and described as follows, to-wit:
The following property located in the NE ¼ of NW ¼ of Sec. 53, T. 18 N., R. 13 E.; commencing at an iron pipe at the intersection of Tensas Avenue and U. S. Highway 65; thence northerly along the western boundary line of Highway 65 a distance of 50 feet to an iron pipe; thence westerly parallel with the northern boundary line of Tensas Avenue a distance of 83 feet to an iron pipe on the east bank of a drainage ditch; thence along the east bank of said drainage ditch in a southwesterly direction a distance of 67 feet, 5 inches to an iron stake on the east bank of said ditch where it intersects the northern boundary line of Tensas Avenue; thence easterly along the northern boundary line of Tensas Avenue a distance of 124 feet to the point of beginning, together with all buildings and improvements thereon or thereunto belonging;
be, and the same is hereby, fixed and determined at the sum of $4,750.00; and
It is further Ordered, Adjudged, and Decreed that the defendant, Charles Leroy Vining, is hereby granted a period of 60 days from the date this judgment becomes final within which to decide whether to surrender to plaintiff, Mrs. Bobbie Jean White Vining Beatty, an undivided one-half interest in and to the aforesaid tracts or to keep the same on paying to plaintiff one-half of the aforesaid values of said property, together with 5% per annum interest thereon from the date of the filing of this suit on September 24, 1957, until paid; said option, at the discretion of the defendant, *53 may be separately exercised as to each of the aforesaid tracts; and
It is further Ordered, Adjudged, and Decreed that, in the event the aforesaid option or election is not exercised within said time, then there be judgment herein in favor of the plaintiff, Mrs. Bobbie Jean White Vining Beatty, and against the defendant, Charles Leroy Vining, for such of the following amounts and sums for which he failed to exercise said corresponding and respective options, with respect to the tracts numbered, in the order listed,

 (10) (13) (15) (16)
 $3,200.00 $1,400.00 $4,000.00 $2,375.00,

with 5% per annum interest thereon from judicial demand, September 24, 1957, until paid.
It is further Ordered, Adjudged, and Decreed that the plaintiff, Mrs. Bobbie Jean White Vining Beatty, have and recover judgment of and against the defendant, Charles Leroy Vining, for the full sum of $36,871.69, together with 5% per annum interest thereon from judicial demand until paid; and
It is further Ordered, Adjudged, and Decreed there be judgment herein in favor of plaintiff, Mrs. Bobbie Jean White Vining Beatty, and against the defendant, Charles Leroy Vining, for the further sum of $900.00 with 8% per annum interest thereon from October 1, 1954, together with 15% of principal and interest as attorney's fees; and, finally,
It is Ordered, Adjudged, and Decreed that all costs of court herein, including costs of Edna Bishop Brock, clerk of court, $165.00; Dorothy Morgel, court reporter, $1,057.00; and expert witnesses' fees for Mrs. McBride, Messrs. Babb, Baker, Dillard, Blue, Donald, and Goodwin at the rate of $50.00 each, together with the cost of this appeal, be paid by the defendant.
Reversed and rendered.