BOWES, Judge.
The plaintiff, Waldo Decuers, takes this appeal from a judgment of the District Court dismissing his demand to set aside a voluntary community property partition on the grounds of lesion. For the following reasons, we affirm the district court judgment.
Cheryl Sunseri Decuers and Waldo De-cuers were divorced on November 21, 1978. On September 21, 1979, they entered into a voluntary compromise and settlement of *789 their community property, by virtue of a duly notarized and recorded act which stated in pertinent part:
1. Mr. Decuers transferred full ownership of the family domicile to Mrs. Decuers, subject to a vendor’s lien (to Mutual Homestead Association) and a money judgment in favor of one Henry F. Jones.
2. Mrs. Decuers transferred full ownership to Mr. Decuers of a vacant lot in Chateau Estates; as consideration for this, Mr. Decuers assumed a collateral mortgage dated in 1974, during the existence of the community.
3. Mrs. Decuers paid to Mr. Decuers the sum of $5,000.00 cash and executed a promissory note to her husband for an additional $5,000.00.
4. Neither party made claim against the other for movable property in their possession.
Subsequently, Waldo Decuers filed a petition for recission of this agreement, alleging that at the time of the partition he was without counsel and in financial straits; further, and most importantly, that the value of the property received by his wife was worth $250,000.00, while the property received by him was worth no more than $20,000.00. Hence plaintiff alleged a cause of action under the lesion articles in Louisiana.
At the trial both plaintiff and defendant stipulated: (1) that the mortgage on the family home as of the date of the partition was $61,469.13; (2) the balance of the judgment in favor of Henry Jones referred to hereinabove was $19,133.60, which Mrs. De-cuers discharged in April, 1979; and the value of the Chateau Estates lot was $32,-500.00.
There are two values which are disputed and which are essential to resolve the issue of lesion. First, there were two collateral mortgages recited in the partition agreement, only one of which is a point of contention. (Neither the transcript nor the record discloses any reason why the other collateral mortgage was not figured in the balance of assets and liabilities, and neither plaintiff nor defendant raises the question on appeal). In the act, the collateral mortgage in question was stated to be in the amount of $17,200.00. However, testimony at the trial, as well as a letter introduced into evidence without objection by Mrs. De-cuers from Commercial Bank, indicated that the balance due on this mortgage as of September, 1979, was actually $13,359.56. We accept the latter figure for our purpose. The pre-trial stipulations verify that the mortgage certificates referred to in the partition reflect the original obligations as undertaken, not as they stood in September of 1979. Since Mr. Decuers was unable to contradict Mrs. Decuers’ figure in this regard, we feel that the amount due on the collateral mortgage was proven with sufficient specificity.
Next, we must consider the value of the family home, the only other pertinent issue. Mr. Decuers produced an expert appraiser, Mr. Walter Wetta, at trial, who testified that the home in its present condition in September of 1979 was valued at $146,-000.00. Mrs. Decuers’ appraiser, Mr. Robley Gelpi, appraised the same property at $133,-000.00. The disparity between the two appraisals is the result of major repairs which Mrs. Decuers undertook just prior to and after the agreement was actually signed, the value of which repairs were taken into account in Gelpi’s appraisal. The trial court did not admit evidence of the repairs, and so could not have considered such testimony as that of Mrs. Decuers and her contractors in its decision. However, the evidence was proffered for our purposes and will be weighed by this court on appeal.
Gelpi did not subtract the actual costs expended by Mrs. Decuers, but rather discounted some $4,700.00 of the reported expenditures. In so doing, he attempted to equalize the “age factor” by testifying that an allowance of $12,000.00 for the repairs was suggested by using a market data approach on comparable properties with some degree of depreciation. This “market data” approach is one reliable and generally-accepted method of real estate appraisals, *790 (used by both experts in this case), along with a cost approach also used by Gelpi.
We find that Mrs. Decuers proved, by her testimony and that of several contractors, as well as by the bills and cancelled checks proffered, the general condition of the house at the time of the partition. The repairs considered by Gelpi were necessary and substantially affect the value of a house — painting, carpentry, roof repairs, etc. Expenses in the area of redecoration (placement of ceiling fans, a wrought iron gate, and the entrance door) were not considered.
It is our opinion that the record clearly substantiates the fact that the home, at the time of the partition, was generally in disrepair. Further, we find that the method used by Gelpi to determine the value of the repairs was not speculative, but rather a generally-accepted approach to real estate appraisals. Therefore, we find no abuse of discretion in the trial court’s acceptance of Gelpi’s figure.
“In all questions of lesion the value of the property which was the subject of the contract at the time it was entered into is the criterion by which lesion is to be ascertained. LSA-C.C. Art. 1871. The burden of proof is upon the complaining party to prove (1) the value of the property sold in the state in which it was at the time of the contract, according to the usual terms of credit given on sales of that nature, and (2) the difference between such value and the price received. From such difference, a determination must be made as to whether the lesion is sufficient to invalidate the contract. LSA-C.C. Art. 1870.” (Emphasis added.) Ozane v. Ozane, 392 So.2d 774 (La.App. 3rd Cir.1980), quoting Beatty v. Vining, 147 So.2d 37, 45 (La.App. 2nd Cir.1962).
That some of the repairs taken into consideration in Gelpi’s appraisal were undertaken shortly before the agreement was actually signed is of no importance as Mrs. Decuers paid for them. Part of the stated consideration in the contract was the assumption of the Jones judgment by Mrs. Decuers, which judgment was paid off prior to September 1979. In point of fact, it was paid off in April 1979, at the same time Mrs. Decuers began making repairs. The compromise took place over a period of months as reflected in the testimony at trial. Each party had equal opportunity to bargain for their advantage. The date the agreement was signed was a finalization of these negotiations, begun months earlier. It is evident that neither party intended to be bound by the September 21,1979 date, or else the payment of the Jones judgment would not have been recited as consideration.
This partition is, after all, an agreement between a former husband and wife, not strangers dealing at arm’s length. Besides the stated repairs, Mrs. Decuers paid several other debts on the community property for which no credit was acknowledged in the agreement, including back taxes on the lot which Mr. Decuers was eventually granted. By so doing, she prevented sale of the property for redemption.
While the agreement in question is most certainly a partition, and as such subject to recission on grounds of lesion (C.C. Art. 1860, 1861), to ignore such evidence as outlined above would be to negate the compromise quality of all such agreements, and discourage such non-judicial partitions.
With this in mind, we have computed the community property as follows:
Community Assets:
Chateau Estates Lot $ 32,500.00
Family home 133,000.00
Total Assets $165,500.00
Community Debts:
Mortgage on Family home $ 61,469.00
Judicial Mortgage (Judgment) 19,133.60
Collateral Mortgage 13,359.56
Total Debts $ 93,961.56
RECAPITULATION:
TOTAL ASSETS $165,500.00
TOTAL DEBTS 93,961.56
NET ASSETS $ 71,538.44
Louisiana jurisprudence states the formula for determining lesion as follows:
*791 The proper way to determine lesion beyond one-fourth is to first determine the true value of the property partitioned and to then calculate whether a party received three-fourths of his share. La.Civ.C. arts. 1860, 1861 and 1398; Bedwell v. Bedwell, 399 So.2d 685 (La.App. 1st Cir.1981). Gordon v. Gordon, 424 So.2d 1042 (La.App. 1st Cir.1982)
PLAINTIFF’S SHARE (or ½ of
Net Assets) $35,769.22
¾ OF PLAINTIFF’S SHARE $26,826.91
PLAINTIFF RECEIVED:
Lot $32,500.00
Note from Mrs. Decuers 5,000.00
Cash from Mrs. Decuers 5,000.00
TOTAL $42,500.00
Less mortgage debt . 13,359.56
Net Received. $29,140.44
As can be seen from the above formula, there was no lesion in the partition agreement between plaintiff and defendant. There is no manifest error in the judgment of the trial court and it is, therefore, affirmed. All costs of this appeal are to be paid by plaintiff/appellant.
JUDGMENT AFFIRMED.